

# THE ATTORNEY GENERAL
# OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

January 27, 1964

Dr. J. E. Peavy
Commissioner of Health
Texas State Department
  of Health
Austin, Texas

Dear Dr. Peavy:

Opinion No. C- 208

Re: Whether a slaughter house
    or a meat processing house
    which is within five thou-
    sand feet of a city limits
    is subject to inspection
    by the city under Section
    12 of the Meat Inspection
    Act, Article 4476-3, V.C.S.

We quote in part from your letter requesting an
opinion from this office as follows:

"In Opinion No. WW-747 certain questions
presented to your department relative to the
legality of the Meat Inspection Law were sub-
mitted by this Department for clarification.
Question No. 7 submitted reads as follows:

"'It is further desired to know whether
or not in circumstances where the health
jurisdiction of a local health officer ex-
tends by agreement beyond the geographic
limits of a municipality complying with
Section 12 of the law, can the meat in-
spection law be then applied by the said
health officer to the full geographic limits
of the agreed jurisdiction.'"

"In answer to this question the opinion
held the following:

"'Since there is no provision in
Article 4476-3, either express or implied,
for a city adopting the provisions of the
Meat Inspection Act under Section 12 to
operate beyond the corporate limits of the
municipality, it is the opinion of this
Department that supervision of activities
under the Meat Inspection Act by the cities
cannot extend beyond the territory of the
municipality.'"

"We wish to call your attention to Article 1175 of Vernon's Civil Statutes, especially Section 19, which reads as follows:

"'19. Each city shall have the power to define all nuisances and prohibit the same within the city and outside the city limits for a distance of five thousand feet; to have power to police all parks or grounds, speedways, or boulevards owned by said city and lying outside of said city; to prohibit the pollution of any stream, drain or tributaries thereof, which may constitute the source of water supply of any city and to provide for policing the same as well as to provide for the protection of any water sheds and the policing of same; to inspect dairies, slaughter pens and slaughter houses inside or outside the limits of the city, from which meat or milk is furnished to the inhabitants of the city.'"

"We are of the opinion that the above quoted law would authorize cities to make inspections that would be required under our Meat Inspection Law, Article 4476-3, V.C.S. We seek an opinion from your office clarifying this question.

"We also wish to call your attention to Article 970a of Vernon's Civil Statutes as passed by the Regular Session of the 58th Legislature and which is commonly referred to as the Municipal Annexation Act, which became effective August 23, 1963. The purpose of establishing extraterritorial jurisdiction is well stated in Section 3, subsection (A) of the Act, which reads as follows:

"'Sec. 3 A. In order to promote and protect the general health, safety, and welfare of persons residing within and adjacent to the cities of this State, the Legislature of the State of Texas declares it to be the policy of the State of Texas that the unincorporated area, not a part of any other city,

which is contiguous to the corporate limits
of any city, to the extent described herein,
shall comprise and be known as the extra-
territorial jurisdiction of the various pop-
ulation classes of cities in the State and
shall be as follows:

"'. . .'"

"With the passage of this Municipal
Annexation Act and if such is adopted by
cities in the form of an ordinance, we are
of the opinion that cities have the authority
to control the area under the extraterritorial
areas which meet the requirements of Section
3A of the Act and other procedures as outlined
under the Act. We respectfully request a
review in light of the above two quoted laws
as to whether or not there could be a con-
flict and exception to Opinion No. WW-747
where a slaughter house or a meat processing
house would be within five thousand feet of
a city limit and operating under our Meat
Inspection Law cities would have the authority
to supervise the activities.

"We are of the opinion that the location
of such facilities operating under our Meat
Inspection Law, Article 4476-3, V.C.S., could
probably be inspected by local city health
officers or their representatives. We seek
an opinion from your office clarifying this
question."

There have been no amendments, court decisions
or Attorney General's Opinions affecting Article 4476-3,
Vernon's Civil Statutes, Meat Inspection Law, which would
have the effect of modifying or overruling our answer to
Question No. 7 in Attorney General's Opinion WW-747 (1959).
Inasmuch as the scope of authority in such matters is con-
siderably different between Home Rule and General Law cities,
we will examine the two categories separately.

Article 1175, Vernon's Civil Statutes, enumerates
the powers of Home Rule Cities. Under Section 19 of Article
1175, Vernon's Civil Statutes, a Home Rule City has the authority
to define nuisances and prohibit them within and without the
city limits for a distance of five thousand feet. Threadgill

v. State, 160 Tex.Crim. 658, 275 S.W.2d 658 (1955). Also under the provisions of Section 19 of Article 1175, Vernon's Civil Statutes, a Home Rule City is authorized to inspect dairies outside the limits of the city from which milk is furnished to the inhabitants of such city. Producers Association of San Antonio v. City of San Antonio, 326 S.W.2d 222 (Tex.Civ.App. 1959, error ref., n.r.e.). Although we find no court decision which holds that a Home Rule City is authorized to inspect slaughter houses inside or outside the city limits of the city, it is our opinion based on the express language of Section 19 that a Home Rule City may make such inspections of slaughter houses. However, no inspection may be adopted by a city ordinance which abridges the right to sell meat or meat products in the city further than reasonably necessary to protect the public health. City of Greenville v. Pratt, 214 S.W.2d 179 (Tex.Civ.App. 1948, error ref., n.r.e.).

A city incorporated under the general law has only those powers as are granted by the Legislature and provided for in the Constitution and those necessarily implied therefrom. City of Paris v. Sturgeon, 110 S.W. 459 (Tex.Civ.App.,1908). And these legislative grants of municipal powers are strictly construed. City of Brenham v. Holle and Seelhorst, 153 S.W. 345 (Tex.Civ.App., error ref., 1913). Article 1015, Vernon's Civil Statutes, lists powers of the governing body of cities incorporated under the general law.

Since Article 1015 does not expressly or impliedly authorize the inspection of a slaughter house or a meat processing house which is outside the limits of a city incorporated under the general law, it is our opinion that no such authority exists. City of Sweetwater v. Hamner, 259 S.W. 191 (Tex.Civ.App. 1924).

Section 3 of Article 970a, known as the Municipal Annexation Act expands the police powers of incorporated cities to include the unincorporated area not a part of any other city which is contiguous to the incorporated limits of such city. This police power is known as extraterritorial jurisdiction and the extent of this jurisdiction is based on the population of the city. The Municipal Annexation Act not only establishes the extraterritorial jurisdiction of incorporated cities and regulates the authority of such cities to annex territory but it also provides for the disannexation of certain areas annexed by the cities. The extraterritorial jurisdiction of incorporated cities which is expressly provided for in the Act is limited to the extension of ordinances to all of the area under its extraterritorial jurisdiction, the application of which establishes rules and regulations governing the subdivisions and development

Dr. J. E. Peavy, page 5 (C-208 )

of land.   There is no provision in the Municipal Annexation
Act which authorizes any incorporated city to extend by ordinance
to all or any part of the area under its extraterritorial juris-
diction any ordinance the purpose of which is to regulate or
police any commercial enterprise.   The exercise of police power
is not an inherent right of a municipal corporation.   City of
Dallas v. City Packing Company, 86 S.W.2d 60 (Tex.Civ.App. 1935,
error dism.).

                    S U M M A R Y

        A Home Rule City is authorized to inspect
    a slaughter house or a meat processing house
    which is outside its city limits under the pro-
    visions of Section 19 of Article 1175, Vernon's
    Civil Statutes, and not under the authority of
    the Meat Inspection Law, Article 4476-3, Vernon's
    Civil Statutes, or the Municipal Annexation Act,
    Article 970a, Vernon's Civil Statutes.   A general
    law city is not authorized to make any such in-
    spections outside its limits.

                        Yours very truly,

                        WAGGONER CARR
                        Attorney General

                        By: I. Raymond Williams, Jr.
                            I. Raymond Williams, Jr.
IRW:mkh                     Assistant

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Marietta Payne
Arthur Sandlin
Malcolm Quick
Robert Lewis

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone